Filed 11/5/20  P. v. Johnson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

PAUL WAYNE JOHNSON III,

    Defendant and Appellant.

E074037

(Super.Ct.No. BAF1701172)

OPINION

APPEAL from the Superior Court of Riverside County.  F. Paul Dickerson III, Judge.  Affirmed.

David W. Beaudreau, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

### FACTUAL AND PROCEDURAL HISTORY

A.    <u>PROCEDURAL HISTORY</u>

On September 4, 2019, an amended information charged defendant and appellant Paul Wayne Johnson III with seven crimes involving three victims as follows:  (1) lewd

acts on A.V., a child under the age of 14 (Pen. Code, § 288, subd. (a); counts 1-3); (2) oral copulation on A.V., a child under the age of 10 (Pen. Code, § 288.7, subd. (b); counts 4 & 5); (3) lewd act on A.R., a child under the age of 14 (Pen. Code, § 288, subd. (a); count 6); and (4) lewd act on N.M., a child under the age of 14 (Pen. Code, § 288, subd. (a); count 7).

As to counts 1 through 5, the amended information alleged that defendant committed the charged offenses against more than one victim under Penal Code section 667.61, subdivision (e)(4). As to counts 6 and 7, the information also alleged that defendant engaged in tying or binding the victims while committing the charged offenses under Penal Code section 667.61, subdivision (e)(5).

On September 10, 2019, a jury found defendant guilty on counts 1 through 5. The jury deadlocked on counts 6 and 7. Moreover, although the jury foreperson entered a true finding on the multiple-victims allegation on the verdict forms for counts 1 through 5, two jurors denied finding the allegation true when polled. The trial court found that the jury was hopelessly deadlocked on counts 6 and 7, as well as the special allegations on counts 1 through 5. Therefore, the trial court declared a mistrial as to counts 6 and 7 and the special allegations.

On November 1, 2019, the trial court sentenced defendant to prison for 12 years, plus 30 years to life, as follows: (1) the upper term of eight years on count 1; (2) midterm of two years, consecutive, on counts 2 and 3; and (3) two consecutive 15-years-to-life terms on counts 4 and 5. On the People's motion, the trial court dismissed counts 6 and 7.

On July 20, 2020, the court struck the enhancement allegations attached to counts 1 through 5.

On November 4, 2019, defendant filed a timely notice of appeal.

B.    FACTUAL HISTORY[1]

When A.V. was around five years old, she and her younger brother moved in with their maternal grandmother (Grandmother), who lived in San Bernardino.  Defendant, who was Grandmother's boyfriend, lived with them, as did A.V.'s uncle.  A.V. saw her mother only on the weekends.

When A.V. was around five or six years old, defendant started to touch her breasts and vagina.  It occurred "about every week."  Defendant told A.V. not to tell anyone and told her "it was a game."

When A.V. and defendant were in the garage once, he told her to touch his penis.  Defendant put his penis in A.V.'s mouth.  A.V. stated that "some stuff came out," and defendant wiped it off with a towel.

When A.V. was around eight years old, they moved from San Bernardino to Hemet.  A.V., Grandmother, A.V.'s great-grandmother, A.V.'s younger brother, her two uncles, and defendant lived together.  A.V. continued to see Mother on the weekends and at family events.

Defendant continued touching A.V. in the Hemet house.  When they were alone, defendant would touch A.V. in Grandmother's bedroom or in the living room.  He

---

[1] Facts related to counts 6 and 7 are omitted since the jury deadlocked on—and the court dismissed—those counts.

3

touched A.V.'s breasts and vagina under her clothes. A few times, defendant grabbed A.V.'s butt. On at least one occasion, A.V. touched defendant's penis with her hands.

One time, defendant put his penis on A.V.'s thigh or vagina while they were in the bedroom. His penis was "straight." She could not remember if she had clothes on during this incident.

On more than one occasion, defendant orally copulated A.V. while she lay on the bed in the bedroom. At least once, defendant orally copulated A.V. in the living room while she sat on the couch and he was on his knees in front of her.

Once when A.V. was in the bathroom, defendant came in and asked her if she wanted "to see the white stuff come out." He pulled his pants down, masturbated, and ejaculated. As defendant was wiping the "white stuff," Grandmother entered the bathroom; she took A.V. into Grandmother's room and asked her, "Do you want him to go to jail?" A.V. responded, "no."

A.V. sometimes said "no" to defendant when he was attempting to touch her. Although defendant stopped a few times, he usually continued to touch her even when A.V. said "no." When A.V. would tell defendant the touching made her feel uncomfortable, defendant would respond that "he used to do it to his daughter," which would make A.V. think that what he was doing was okay.

One weekend when A.V. was nine years old, she was at Mother's house; she and her stepsister were in bed watching a movie. Mother caught them kissing and touching each others' private parts. When Mother talked to A.V. about the incident, she told Mother that defendant had been touching her.

The next morning, Mother took A.V. to the police station, where A.V. took part in a forensic interview. Two days later, A.V. underwent a physical examination. The examiners found nothing unusual.

Defendant testified that he never touched A.V. He stated that he had spent time with his nieces and nephews, grandnieces and grandnephews, and with children in a church group. He had never previously faced allegations of inappropriate behavior.

Defendant met Grandmother and moved in with her in 2005. Mother was around 12 years old at the time. She was disrespectful to Grandmother and did not like defendant. When Mother was 16 or 17 years old, she gave birth to A.V. At that time, Mother was using drugs and "running in the streets." On one occasion, Mother called asking Grandmother to pick A.V. up. Grandmother refused, but defendant went to the location, which was a motel, and found A.V. in the room, still in her car seat. There were five men in the room with Mother and A.V. When A.V. was around three years old Grandmother became the guardian for A.V. and A.V.'s younger brother.

Defendant testified that when A.V. was eight or nine years old, A.V. wanted to live with Mother. Grandmother and defendant supported Mother taking her children back but they wanted Mother to be responsible. They reminded Mother she had to show a year of stable housing and employment. Thereafter, Mother filed false allegations that defendant was beating the children. She later apologized for lying.

Defendant stated that Grandmother "had a strong sense of what was right and wrong" and would not have tolerated any misconduct by defendant. She never would have protected defendant if she had found him in the bathroom, as claimed by A.V.

5

Defendant's older brother Anthony testified at trial. Anthony lived with Grandmother and defendant for two years during the time they cared for A.V. and her brother. He stated that defendant tried to "[do] the right thing by the kids." Sometimes the children would cause dissent in the home and there would be an uncomfortable atmosphere in the home. Defendant never in his life displayed a sexual interest in children and was trustworthy and honest "[a]s much as any of us would be at any given time." He did not believe defendant was a liar. When asked if defendant was the type of person to do something inappropriate to a child, defendant's brother answered, "Absolutely not."

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issues to assist the court in its search of the record for error:

(1) "Did the trial court prejudicially err by instructing the jury about unanimity with CALCRIM No. 3500 (Unanimity), rather than CALCRIM No. 3501 (Unanimity: When Generic Testimony of Offense Presented)?"

(2) "Did the trial court prejudicially err by failing to instruct the jury with CALCRIM No. 302 on evaluating conflicting evidence?"

6

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error. We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists. (*Id.* at p. 126; *Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                                                                    J.

We concur:

McKINSTER
                    Acting P. J.

MENETREZ
                    J.

7